IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SALVADOR FLORES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 05 C 6503 |
| v. | ) |
| | ) Suzanne B. Conlon, Judge |
| CHICAGO TRANSIT AUTHORITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Salvador Flores sues his former employer, the Chicago Transit Authority ("the CTA"), for race and national origin discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The CTA moves for summary judgment and to strike Flores' purported affidavit and portions of his statement of additional facts, as well as his response to the CTA's statement of material facts. For the reasons set forth below, the motion to strike is granted in part, and the motion for summary judgment is granted.

## BACKGROUND

### I. Preliminary Issues

#### A. Flores' Purported Affidavit

Flores filed a two-page, 10-paragraph document entitled "affidavit" in opposition to the summary judgment motion. The CTA moves to strike the purported affidavit because it fails to comply with Fed. R. Civ. P. 56(e), contains hearsay and contradicts his deposition testimony. Although the purported affidavit opens with a statement that Flores was "duly sworn and on oath," the notary's attestation certificate is blank. Pl. Aff. at 1. Flores signed the statement, but failed to

affirm that his statement was true and correct, under penalty of perjury. Thus, his unsworn, undated statement is inadmissible hearsay. *See also* 28 U.S.C. § 1746 (an affidavit may be unsworn if it is signed and contains a statement "under penalty of perjury . . . the foregoing is true and correct").

*Pro se* litigants are "not held to the stringent standards of formally trained attorneys, and their pleadings are to be liberally construed." *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1047 (7th Cir. 1989). But a *pro se* plaintiff must follow procedural rules. *McNeil v. U.S.*, 508 U.S. 106, 113 (1993). Accordingly, the purported affidavit is inadmissible under Rule 56(e), and must not be considered.

### B.     Flores' Statement of Facts

The CTA's motion to strike ¶¶ 1, 2, 3, 8, 10 and 12 of Flores' statement of facts must be granted because he relies solely on his inadmissible purported affidavit. Paragraphs 7, 14 and 16 cite record evidence (Flores' deposition) in addition to his inadmissible unsworn statement and may be considered.

### C.     Flores' Response to the CTA's Statement of Facts

The CTA moves to strike numerous paragraphs of Flores' response to its statement of facts on the grounds that he failed to cite admissible supporting evidence, improperly asserted additional facts, mischaracterized deposition testimony or failed to respond to the CTA's factual assertions. Flores was required to file a concise response to the CTA's statements; when he disagreed with the CTA's statements, he was required to refer to affidavits or record evidence. LR 56.1(b)(3)(B). Responses that do not deny assertions of fact with citations to supporting admissible evidence are deemed admissions. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000). Responses that include denials without citation of supporting admissible evidence, unresponsive

denials, and responses adding additional facts do not comply with Local Rule 56.1 and ordinarily must be disregarded. Flores was properly warned of these consequences. LR 56.2; Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment, Dkt. No. 23 (July 27, 2006). As a result, portions of his responses to the CTA's facts are disregarded for the following general reasons:

> Paragraphs 12, 18, 41, 45, and 51 (reliance on inadmissible unsworn statement and inclusion of additional facts);
>
> Paragraphs 21, 26, 33, 37, 53, and 56 (inclusion of additional facts); and
>
> Paragraphs 32 and 50 (unresponsive answers deemed admissions).

The CTA's motion to strike is denied in all other respects.

### D. Statute of Limitations and Failure to Exhaust Administrative Remedies

The CTA's two-paragraph conclusory argument that Flores asserts claims barred by the Statute of Limitations and by failure to exhaust administrative remedies is facially insufficient to establish that his discrimination and retaliation claims are barred as a matter of law. The court therefore considers the summary judgment motion on its merits.

## II. Facts

The following facts are undisputed unless otherwise noted. On January 2, 1973, Flores, an Hispanic male of Mexican descent, began working for the CTA as a bus operator. Def. Facts at ¶¶ 36, 4. Flores was an at-will employee. *Id.* at ¶ 52. He held a transportation manager position from 1997 until he was discharged on August 3, 2005. *Id.* at ¶¶ 9-10. When he was discharged, Cary Morgen was the general manager of bus service management. *Id.* at ¶ 1. William Mooney was the vice president of bus operations. *Id.* at ¶ 46. Patricia Thomas-Miller was Flores' immediate supervisor. *Id.* at ¶ 49.

Flores was unhappy with his schedule, which changed frequently and required him to work nights. Def. Facts at ¶¶ 12, 14. When he first started as a manager, he worked nights because the CTA wanted him to serve as a regular substitute for night service managers. *Id.* at ¶ 20. Flores was never told that his unpredictable work hours were due to his race or national origin. *Id.* at ¶ 15. But he was not assigned the same type of schedule as the other managers. *Id.* at ¶ 22. Nor was he given Saturdays and Sundays off, his preferred days. *Id.* at ¶ 25.

Flores did not directly ask Morgen to stop scheduling him for night shifts. Pl. Facts at ¶ 4. But on January 6, 2005, he sent Morgen an email asking him "what is the procedure to schedule [m]anagers, is by seniority, who you like, what color they are, or who don't write emails [sic]." *Id.* at ¶ 5. After he sent the email to Morgen, Flores was permitted to take Fridays and Saturdays off, but still not Sundays. Def. Facts at ¶¶ 25-26; Pl. Facts at ¶ 6.

In 2002, Flores was disciplined and recommended for discharge. Def. Facts at ¶ 38. The circumstances underlying the 2002 disciplinary action are not clear from the record. In lieu of discharge, Flores and the CTA entered an agreement allowing him to continue work after a 15-day suspension. *Id.* at ¶ 39. In 2003 and 2004, Flores missed approximately three to four months of work due to injuries. *Id.* at ¶ 41. Without support in the record other than his unsworn statement, Flores maintains these absences were due to work-related injuries. Notwithstanding his absences, he received a satisfactory performance review in 2004, which stated that he met CTA expectations. Pl. Facts at ¶ 20. Morgen, the general manager, approved and signed Flores' review on July 11, 2005. *Id.*

In July 2005, presumably after Morgen signed his review, Flores had a verbal disagreement with a manager that ultimately led to his termination. Def. Facts at ¶¶ 40, 51. The parties vigorously

dispute the circumstances of the disagreement. The CTA claims Flores was washing his personal automobile during work hours at a CTA facility. *Id.* at ¶ 40. When confronted by a manager, Flores reacted with hostility. *Id.* Flores denies he was washing his car, explaining that his car was parked near CTA vehicles, which were being washed. Pl. Facts at ¶ 15. Consequently, his car was sprayed with water. *Id.* As Flores was leaving for the day, he noticed the water and wiped it off his car. *Id.* When a CTA manager confronted him, he tried to explain the situation. *Id.* at ¶ 9. He became upset because the manager continued to accuse him of washing his car, even after hearing his explanation. *Id.* According to the CTA, however, Flores' car was wet on top and underneath, there were towels, soap and a water hose next to him, and he was cleaning out the inside of his car. Def. Resp. Pl. Facts at ¶ 15. Morgen testified he conducted an investigation and found that Flores washed his personal automobile while on duty and acted inappropriately with other managers. Def. Facts at ¶ 56. Flores criticizes Morgen's investigation, noting Morgen did not interview him to get his side of the story. Pl. Facts at ¶ 16.

Morgen recommended Flores' termination; Mooney, the vice president, approved the decision. Pl. Facts at ¶ 13. Morgen testified in his deposition that Flores was terminated for poor work performance and specifically for the car washing incident. Def. Facts at ¶ 51. After a termination hearing, Flores was dismissed on August 3, 2005. *Id.* at ¶¶ 10, 54-55. Several days later, Flores filed a discrimination charge with the Equal Employment Opportunity Commission, alleging discrimination on the basis of race, national origin and retaliation. Am. Compl. at ¶ 6. On October 5, 2005, the Equal Employment Opportunity Commission issued a right to sue letter. *Id.* at ¶ 8.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A movant has the initial burden of demonstrating that it is entitled to summary judgment. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Once a movant has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Cont'l Cas. Co.*, 427 F.3d at 1041. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. Race and National Origin Discrimination Claims

To prevail on summary judgment, the CTA must demonstrate that Flores cannot establish a *prima facie* case of discrimination, or that Flores failed to submit sufficient evidence to raise an inference that the CTA's proffered reasons for his termination were a pretext for discrimination. In a Title VII case, an employee may either offer direct evidence of the employer's discrimination, or he may proceed under the indirect burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Flores does not present direct evidence of discrimination. Therefore, the court applies the *McDonnell Douglas* burden-shifting framework. The CTA must show that Flores cannot establish a *prima facie* case of discrimination. *Id.* at 802. If he establishes a *prima facie* case, the burden

shifts to the CTA to articulate a legitimate, non-discriminatory reason for his termination. *Id.* If the CTA meets this burden, he may rebut its evidence by showing that the CTA's reason is a pretext for discrimination. *See id.* at 803-05; *see also Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 643-44 (7th Cir. 2006). To survive summary judgment, Flores must present "evidence that calls into question the veracity of the [CTA's] explanation." *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 601 (7th Cir. 2001); *see also Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) ("[p]retext is more than a mistake on the part of the employer; it is a phony excuse"). The fact that Flores proceeds *pro se* does not relieve him of the burden to establish a *prima facie* case of discrimination and to present evidence giving rise to an issue of material fact. *Carr v. United Airlines*, No. 03 C 8553, 2005 WL 1705830, at **3-5 (N.D. Ill. July 15, 2005) (Pallmeyer, J.).

The CTA has the initial burden of demonstrating that Flores cannot establish a *prima facie* case of race and national origin discrimination. The *prima facie* case requires a showing that Flores (1) belongs to a protected class; (2) his performance met the CTA's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment. *Keri*, 458 F.3d at 643.

### A. Flores' Performance

The CTA argues summary judgment must be granted on Flores' discrimination claims because he cannot demonstrate his performance met the CTA's legitimate expectations, and because he has not identified similarly situated employees who were treated more favorably. The CTA contends Flores did not meet its legitimate expectations due to misconduct and absenteeism. He was disciplined in 2002 and recommended for discharge, but then was allowed to continue work after a suspension. Def. Facts at ¶¶ 38-39. Thereafter, he missed three to four months of work in

7

2003 and 2004 due to injuries. *Id.* at ¶ 41. Finally, he was involved in an incident in which the CTA claims he washed his personal automobile while on duty at a CTA facility, and reacted hostiley when he was confronted by CTA managers. *Id.* at ¶ 51. The CTA claims these facts demonstrate Flores did not meet its employment expectations.

Flores does not dispute that he was disciplined and absent for lengthy periods. However, he vehemently disputes the CTA's account of the car washing incident. Pl. Facts at ¶ 15. He explains that he was not washing his car, and that he reacted as he did because the CTA manager who confronted him refused to accept his explanation. *Id.* at ¶¶ 9, 15. Water was sprayed on Flores' car because it was parked in a CTA lot near CTA automobiles as they were washed, and he merely wiped the water from his car. *Id.* at ¶ 15. He was not on duty at the time of the incident; he was leaving for the day. *Id.* He apparently argues the CTA's investigation of the incident was not in good faith because he was not interviewed. *Id.* at ¶ 16.

With respect to his absences in 2003 and 2004, he offers a 2004 performance review in support of his contention that he met the CTA's legitimate expectations. Pl. Facts, Ex. III. The performance review gives him an overall rating within the "Meets Expectations" category. *Id.* at ¶ 20. Morgen signed the review on July 11, 2005. *Id.* Flores argues the CTA cannot contend he failed to meet performance expectations due to absences during 2004 when his written performance review reflects that he met CTA expectations for that time period. Relying on his unsworn statement, he also argues that his absences were a result of work-related injuries. *Id.* at ¶ 6. The latter is inadmissible.

Viewed in the light most favorable to Flores, the 2004 performance review supports a reasonable inference that he met the CTA's employment expectations. He disputes the CTA's

account of the car washing incident. A jury could find his explanation plausible, and could be swayed in his favor by the fact that the CTA did not interview him or consider his side of the story. A reasonable jury could also conclude that his satisfactory 2004 performance evaluation undercuts the CTA's argument that his absenteeism during 2004 is one of the reasons he later purportedly failed to meet its expectations. A jury might reasonably consider the fact that the CTA permitted him to return to work as a manager after his 2002 disciplinary incident, rather than simply terminating him, as evidence that overall he met the CTA's expectations.

B.     Similarly Situated Employees

The CTA contends Flores cannot establish the fourth element, that similarly situated non-Hispanic employees were treated more favorably. When asked during his deposition whether he knew of transportation managers who were treated more favorably, he responded "[a]ll of them." Def. Facts ¶ 45. He failed to name any similarly situated non-Hispanic managers who received more favorable treatment. *Id.* He argues he should not be penalized because the CTA failed to ask follow-up questions at his deposition to obtain the names of similarly situated individuals. In opposition to the CTA's summary judgment motion, Flores provides names of three non-Hispanic managers who had set work schedules in his opposition memorandum, in his unsworn statement, and in his additional statement of facts and response to the CTA's statement of facts. Pl. Mem. at 1, Pl. Aff. at ¶ 2, Pl. Facts at ¶ 2, Pl. Resp. Def. Facts at ¶ 12.

There is no basis in the record independent of Flores' inadmissible unsworn statement about three similarly situated managers. Nor may the court consider portions of his statement of additional facts and response to the CTA's statement of facts supported solely by his unsworn statement. It is insufficient to merely identify three purportedly similarly situated individuals in his memorandum.

9

Under Rule 56(e), he must submit admissible evidence showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

Nor can Flores establish a *prima facie* case based solely on his deposition testimony that "all" of the other managers were treated more favorably. A reasonable jury could not conclude that his broad, conclusory generalization is sufficient to show that similarly situated non-Hispanic managers received more favorable treatment. *Oest v. Ill. Dept. of Corr.*, 240 F.3d 605, 614 (7th Cir. 2001) (entry of summary judgment is proper against a Title VII plaintiff who presents only his own uncorroborated, conclusory statements that similarly situated co-workers were treated differently); *see also Williams v. City of Chicago*, 325 F. Supp. 2d 867, 879 (N.D. Ill. 2004) (Castillo, J.) (plaintiff failed to establish *prima facie* case because she only pointed to "others" who were similarly situated rather than identifying specific employees).

In his deposition, Flores did not provide any names when asked to identify similarly situated CTA employees. His deposition testimony might suggest he was confused by the question. He asked defense counsel to repeat the question three times. Def. Appx., Ex. C at 45. His answer "all of them" is not an admission there were *no* managers who were similarly situated; he failed to identify any of "them." *Id.* Defense counsel could have continued to question Flores, who was proceeding *pro se*, to ensure he understood the question, but instead counsel moved on to other issues. Flores asserts that he should not be penalized for defense counsel's failure to ask follow-up questions. Pl. Mem. at 6.

The CTA argues Flores is improperly attempting to shift his burden to produce evidence of similarly situated individuals. Def. Reply at 2. In its motion to strike his unsworn statement, the CTA suggests Flores acted evasively during his deposition when he answered vaguely "all of them,"

and then immediately began discussing an unrelated exhibit. Def. Mot. to Strike at 3. Viewed in Flores' favor, a reasonable jury could infer from his deposition testimony that he did not identify similarly situated individuals during his deposition because he was not directly asked to do so, and not because he could not do so. Nonetheless, Flores' conclusory, uncorroborated statement that "all" other managers were treated more favorably is insufficient to establish a *prima facie* case of discrimination. *Oest*, 240 F.3d at 614. Accordingly, summary judgment must be granted on Flores' discrimination claims.

## III. Retaliation Claim

Flores claims the CTA retaliated against him by terminating him for complaining about his schedule in an email to Cary Morgen, the general manager. Title VII prohibits employers from retaliating against employees who oppose unlawful employment practices. 42 U.S.C. § 2000e-3(a). To prevail on summary judgement, the CTA must demonstrate that Flores cannot establish a *prima facie* case of retaliation. To establish a *prima facie* case under the indirect method articulated in *McDonnell Douglas*, Flores must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action. *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (citing *Krause v. City of LaCrosse*, 246 F.3d 995, 1000 (7th Cir. 2001)). Flores has not produced evidence that his email was protected expression, nor can he establish that there was any connection between his email and his termination.

Flores argues he engaged in protected expression when he sent an email to Morgen on January 6, 2005 complaining about his work schedule. In his email Flores asked Morgen, "what is the procedure to schedule [m]anagers, is by seniority, who you like, what color they are, or who

11

don't write emails [sic]." Pl. Facts at ¶ 5. The CTA denies Flores' email constitutes protected expression. Flores responds, without factual support or legal analysis, that the question should be left to the trier of fact. Pl. Mem. at 7.

Flores' email does not constitute a protected expression because his communication does not involve opposition to discrimination. *Woods v. Ill. Dept. of Transp.*, No. 03 CV 4098, 2005 WL 1691107 at *4 (S.D. Ill. May 31, 2005) (Gilbert, J.). His email is not protected unless it opposes conduct prohibited by Title VII, or at least shows that he had a reasonable belief he was opposing discriminatory conduct. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997). Comments need not mention race or national origin to be protected expression under Title VII. But comments must indicate that discrimination based on race or national origin is the reason for the communication. *See Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 727-28 (7th Cir. 2003) (summary judgment upheld against employee who complained she felt "picked on" but never stated it was because of her sex or gender).

In his email, Flores complained about Morgen's scheduling of work shifts. He did not believe Morgen distributed shifts by seniority, because he had more seniority than other managers, but still worked undesirable shifts. Pl. Aff., Ex. Flores suggested several reasons for Morgen's distribution of shifts among managers; one was by "color." Pl. Facts at ¶ 5. Another possibility was favoritism. *Id.* Flores did not accuse Morgen of distributing preferred shifts based on race; but he asked if color was a basis. *Id.* Viewed in Flores' favor, the text of his email could support an inference that by sending his email, he reasonably believed he was opposing a discriminatory distribution of work shifts. *Gleason*, 118 F.3d at 1147. In addition, a reasonable jury could conclude that Flores' email effectively communicated his complaint because the email made clear

Flores was unhappy with his work shifts and suggested Morgen considered "color" in assigning work shifts. A reasonable jury could conclude Flores' email was protected expression.

The CTA contends the email was not protected expression because the CTA had a formal complaint process and Flores failed to utilize it. *See Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) (vague complaints concerning matters other than discrimination made outside existing formal complaint process did not constitute protected expression). Flores did not respond to this argument. The CTA has submitted an affidavit from Pamela Beavers, general manager of CTA equal employment opportunity programs. Def. Appx., Ex. G. Beavers attests that the "EEO department of the CTA is the formal process to communicate claims of discrimination by CTA employees." *Id.* Flores knew of the CTA's formal complaint process, but did not file his formal complaint until after he was terminated. Am. Compl. at ¶ 6. His email is vague and did not state he believed he was discriminated against based on race or national origin. Rather, the email questioned whether Morgen's distribution of shifts was based on color, among other unrelated factors. Viewing the facts in the light most favorable to Flores and considering the CTA's undisputed formal complaint process, a reasonable jury could not conclude his email constitutes protected expression.

Nor can Flores establish that his email related to a matter of public concern, entitled to protection under the First Amendment. Public employees maintain their right to comment on matters of public interest even though they work for the government. *Connick v. Myers*, 461 U.S. 138, 140 (1983). First Amendment protection applies even when an employee communicates privately with his employer rather than speaking out publicly. *Id.* at 146. To establish a *prima facie* case of First Amendment retaliation in the employment context, Flores must first show that his email pertained

to a matter of public concern. *Id.* at 147-48; *see also Gustafson v. Jones*, 290 F.3d 895, 906 (7th Cir. 2002). This is a legal determination made on the basis of the email's content, form and context, as revealed by the entire record. *Id.* & n.7. Of these three factors, content is most important. *Gustafson*, 290 F.3d at 907. Speech is not a matter of public concern unless it relates to an issue of political, social, or other concern to the community, rather than merely a grievance of personal interest to the employee. *Id.* (citing *Connick*, 461 U.S. at 146). Motive may play a part in determining whether speech is of public concern because speech promoting a purely private concern is not protected. *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994).

Viewed in Flores' favor, the subject matter of his email concerned a possible discriminatory practice of distributing shifts based on color. However, even if his complaint about discriminatory scheduling is deemed a matter of public concern, his email is not automatically protected. *Smith v. Fruin*, 28 F.3d 646, 651 (7th Cir. 1994) (police detective's complaints about second-hand smoke did not concern a matter of public interest because his complaints were voiced in private conversations, using personal terms, and for personal reasons). Flores' email complained about his particular situation: that he had the most seniority yet was scheduled for the worst shifts. Pl. Aff., Ex. at 2. The content of his email indicates his primary focus was a personal scheduling grievance, not a pattern or practice of discrimination. He does not offer any evidence that his email was motivated by a concern other than his own situation. *Marshall*, 32 F.3d at 1219. The context of his speech also indicates its personal character. He expressed his complaint in a casual email. He asked specifically about his own schedule and did not refer to any other employees' complaints. *Id.* The email cannot be fairly characterized as constituting speech on a matter of public concern. Accordingly, under

14

*Pickering v. Board of Education*, 391 U.S. 563 (1968), the court need not examine the reasons for his discharge. *Connick*, 461 U.S. at 146. Flores cannot establish a *prima facie* case of retaliation.

## CONCLUSION

Flores has not met his burden of establishing a *prima facie* case of race or national origin discrimination or of retaliation. The court therefore does not reach issues relating to the reasons for his termination or pretext. The CTA's motion to strike is granted in part.

ENTER:

*[signature: Suzanne B. Conlon]*

Suzanne B. Conlon
United States District Judge

October 4, 2006